**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**JOLENE STOUTENGER,**

                                        **Plaintiff,**

    **v.**                                                                      **5:21-cv-00563**

**CITY OF FULTON; FULTON COMMUNITY**
**DEVELOPMENT AGENCY; BRADLEY**
**BROADWELL; JOSEPH FIUMARA; and,**
**DEANA MICHAELS,**

                                        **Defendants.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**


                            **DECISION and ORDER**

**I.      INTRODUCTION**

Plaintiff Jolene Stoutenger commenced this action asserting claims pursuant to

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. ("Title VII"), 42 U.S.C. §

1983 ("Section 1983"), and the New York State Human Rights Law, N.Y. Exec. Law § 290

*et seq*. ("NYSHRL").   *See* First Amended Complaint ("FAC"), Dkt. 4.   Plaintiff's claims

involve allegations of disparate treatment on the basis of gender and familial status, and

retaliation. *See generally, id*.   Plaintiff seeks injunctive and declaratory relief, as well as

compensatory damages, attorneys' fees, and costs.   *Id*.   Defendants City of Fulton, Fulton

Community Development Agency, Bradley Broadwell, Joseph Fiumara, and Deanna

Michaels (collectively "Defendants") move pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss

1

the FAC in its entirety. Dkt. 17.  Plaintiff opposes the motion, Dkt. 23, and Defendants

reply.  Dkt. 26.  The Court will decide the motion on the parties' submissions and without

oral argument.

## II.    BACKGROUND[1]

Stoutenger is the mother and primary caregiver of several school-aged children.

FAC, ¶¶ 7, 27.   Plaintiff has worked as a Certified Housing Specialist at Fulton

Community Development Agency ("FCDA") since July 1, 2019.  *Id.,* ¶¶ 8, 28.  FCDA is a

municipal corporation that administers federal and state grants for community

development and public improvement projects for the City of Fulton ("Fulton"), including

housing-related grants and subsidies from the U.S. Department of Housing and Urban

Development ("HUD").  *Id.,* ¶ 10.  Bradley Broadwell ("Broadwell") is the current Executive

Director of FCDA and began in that position in December 2020.  *Id.*, ¶ 11.  Joseph

Fiumara ("Fiumara") served as the Executive Director of FCDA until July 2020.  *Id*., ¶ 13.

Fulton is a municipality in Oswego County, New York. *Id.,* ¶ 9.  Deanna Michaels is the

Mayor of the City of Fulton ("Mayor Michaels"), and in that capacity also serves as the

Chairperson of FCDA's Board of Directors, which is comprised of Mayor Michaels and the

City of Fulton's Common Council members. *Id.,* ¶ 15.  As the Chairperson of FCDA's

Board of Directors, Mayor Michaels provides direct management oversight over FCDA

_____

[1]For purposes of this motion, the Court accepts Plaintiff's allegations as true and draws all reasonable inferences in her favor. *See City of Providence v. BATS Glob. Mkts., Inc.,* 878 F.3d 36, 48 (2d Cir. 2017). This tenet does not apply to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements ... are not entitled to the assumption of truth." *Id.; see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)(stating that a court is "not bound to accept as true a legal conclusion couched as a factual allegation").

staff, particularly after Fiumara was removed from his position at FCDA. *Id.*, ¶ 16.

Plaintiff was invited to interview for the Certified Housing Specialist position by the out-going Housing Specialist she replaced, Karen O'Brien ("O'Brien"), a former work colleague. *Id.*, ¶ 29. When she interviewed for the position at FCDA, Stoutenger met with Fiumara. *See id.,* ¶ 31. After Fiumara told Plaintiff that the Certified Housing Specialist position offered only $17.50 per hour, Stoutenger asked if the wage rate was negotiable. *Id.*, ¶ 32. Fiumara told Plaintiff that FCDA could not offer her a higher wage, but that she was eligible to earn more working overtime, and would be eligible for health care insurance for her and her children. *Id.*, ¶¶33, 35. Fiumara also stated that the Housing Services Supervisor, Peggy Birkhead, would be retiring soon and he would consider Plaintiff for that position. *Id.*, ¶34.

Stoutenger alleges that at all relevant times, Defendants have been aware that she is the primary caregiver to her children. *Id.*, ¶ 39. She alleges that in addition to trying to obtain health care insurance for her children through FCDA, Stoutenger has identified herself as the primary caregiver to her children by taking time off from work to tend to their health care needs, and unexpected gaps in child care during the COVID pandemic. *See id.*, ¶¶ 61, 131, 153-155.

**Allegations Regarding Defendants' Discriminatory Differential Treatment**

Stoutenger alleges that she has been subjected to discriminatory differential treatment because of her gender and status as a working mother throughout her tenure at FCDA. In this regard, Plaintiff alleges that she has been subjected to:

• Denial of the Same Wage Rate Paid to Former Housing Specialist Who Had No Child Care Responsibilities: Stoutenger alleges that O'Brien, who she replaced, but

who did not have child care responsibilities, was paid $40,000 per year, whereas FCDA hired Plaintiff at a pay rate of $17.50 (and which was increased by 85 cents per hour in 2020), which is approximately $31,000 per year, or $9000 less than what O'Brien received for the same job. *See* FAC, ¶¶ 31, 70-72, 99.

• Denied Consideration for Promotion to Supervisor in 2019: Stoutenger alleges that FCDA and Fiumara denied her the opportunity to be considered for the promotion to Housing Services Supervisor. *See* FAC, ¶¶ 44-51. Instead, the FCDA Housing Services Supervisor position was offered to Pete Williams ("Williams"), "a man who has no children, and twenty-years (20) experience working as a manager in an unrelated industry." *Id.*, ¶¶ 55-56.

• Denied Promised Overtime: Stoutenger alleges throughout her tenure at FCDA, she has been denied the promised opportunity to earn overtime pay, contending instead that after she started working at FCDA "Fiumara made it clear that overtime pay was only available on the rare occasion and had to be pre-approved." FAC, ¶¶ 58-59.

• Denied Promised Health Care Insurance for Plaintiff and Her Children: Stoutenger alleges that FCDA has denied her promised health care insurance for her and her children. Plaintiff alleges that after she was hired, Fiumara actively dissuaded her from seeking FCDA's fully-paid health care insurance for her children. *See* FAC ¶ 61. Thereafter, FCDA reduced the health care insurance benefit from fully-paid health insurance to a $5000 health care stipend. *See id.*, ¶¶ 62-75. Plaintiff alleges that "[s]ince Mayor Michaels and the FCDA Board of Directors hired Defendant Broadwell, Plaintiff's pay and benefits have continued to be whittled down. In or about January 2021, Plaintiff was informed that FCDA would no longer be provid[ing] the $5000 stipend to be used toward heath care costs. Instead, FCDA now offers a health care insurance plan that is too expensive for Plaintiff to afford." *Id.*, ¶¶120-122.

• Denied Opportunities for Training and Advancement: In April 2021, FCDA staff learned of a new federal voucher and grant program for homeless individuals called the Emergency Housing Voucher ("EHV") program. *See* FAC ¶139. When Stoutenger expressed interest in attending webinars and other training so that she could assist FCDA in obtaining the vouchers and additional federal funding, "FCDA's new assistant director, Sarah Farley ('Farley') actively dissuaded Plaintiff from working to secure the EHV vouchers and programmatic grant from HUD because Farley said [Pete] Williams [the Housing Services Supervisor] should have the opportunity to do this work even though Williams has done nothing to date to secure the EHV vouchers and exhibited no intent to do so." *Id.*, ¶¶ 140-141. In addition, following some staff turnover at FCDA Stoutenger "expressed to FCDA management her willingness to take on additional duties and advance her career at the agency. However, FCDA management has suggested that Stoutenger's ability

4

to obtain a management position at the agency is unlikely because of her alleged inability to get along with Williams, even though she has complained to Defendant Broadwell and Farley several times about Williams because of his failure to do his job and his expectation that Plaintiff will do his work, which is a situation that remains unremedied." *Id.*, ¶¶ 150-151.

### Comments and Other Alleged Mistreatment

Plaintiff alleges that she has been subjected to comments and other mistreatment that, she contends, demonstrate bias on the basis of her gender and status as a working mother.  In this regard, Stoutenger alleges that Fiumara routinely referred to her as "girl" or "good girl," and never took her knowledge of government benefit programs and her professional experience seriously, which he demonstrated by micro-managing every aspect of Plaintiff's work. *See* FAC ¶¶84-94.

Plaintiff also alleges that FCDA's managerial staff, including current Executive Director Broadwell, have admonished Stoutenger in writing for alleged "performance deficiencies," which, she contends, have nothing to do with work performance, but instead Plaintiff's need to use leave when her children require medical attention or when she does not have adequate child care.  As an example, Plaintiff alleges that in June 2021, Broadwell issued her a disciplinary write-up in which he chastised her for alleged "performance issues that affect FCDA and its staff" but the memorandum focused on Plaintiff using her own paid time off ("PTO") on short-notice to tend to her sons' medical care needs and child care during a week in which her children were no longer in school but not yet in camp, and her child care for one day fell through. FAC, ¶¶ 153-154.

### Protected Activity and Defendants' Responses

Stoutenger alleges she has repeatedly protested Defendants' discriminatory

differential treatment by complaining to her FCDA supervisors and Mayor Michaels, all of whom she contends have subjected her to illegal retaliation.  Plaintiff contends that "[a] few weeks after Stoutenger complained about FCDA's failure to afford her the promised promotion to Housing Services Supervisor and her low wage rate, FCDA and Fiumara began to retaliate against her." FAC, ¶ 62.  This included reducing the employer-funded health care benefit as discussed above, and FCDA management notifying the staff that the four (4) paid personal days they had been previously afforded would be eliminated.  FAC ¶ 123.  When Plaintiff complained about what she considered a material change to her employment benefits, "Broadwell told Stoutenger that the decision to take away the $5000 health care stipend and the four paid personal days was made by Mayor Michaels and he could not get involved because of the 'politics' that motivated the Mayor's decisions."  *Id.* ¶ 124.

Plaintiff also alleges that in addition to taking PTO away, immediately after issuing a "baseless" disciplinary write-up to Plaintiff in June 2021, Broadwell informed Stoutenger that when her PTO runs out, she will be unable to use unpaid time off, even if she requires leave to tend to family-care responsibilities. FAC ¶ 162.  "Broadwell explained to Plaintiff that prohibiting unpaid time off at FCDA was a new policy." *Id.* ¶ 163.  Broadwell informed Stoutenger "that under this new policy, she could only take time off from work if that time was accrued sick leave or PTO, and that once her accrued leave had been used up, she would be prohibited from taking time off from work for any reason, and if she did take unpaid leave, she would be fired." *Id.* ¶ 164.  "When Stoutenger met with Defendant Broadwell to discuss the latest baseless write-up, she objected to his threat to

6

terminate her employment if she needed unpaid time off to care for her children. In

response, Defendant Broadwell screamed at Plaintiff and encouraged her to hand in a

resignation letter and leave her position at FCDA." *Id.*, ¶¶ 165-166.

Plaintiff also alleges that in February 2020, three (3) months after Fiumara refused

to interview Stoutenger for the Housing Supervisor position, Plaintiff and her colleague,

Jessica Mills ("Mills") (who was also a working mother with minor children and was told

she would be considered for the Housing Supervisor promotion but was not interviewed for

the position) met with Mayor Michaels to complain about the discriminatory treatment they

felt they were subjected to by FCDA and Fiumara. *See* FAC, ¶¶ 95-101.  The FAC

asserts:

> During the meeting, Plaintiff informed Mayor Michaels about the
> discriminatory treatment she and Mills were subjected to at FCDA, including
> but not limited to: the decision to hire Williams for the Housing Specialist
> Supervisor position even though the position had been promised to both
> Mills and Stoutenger; Plaintiff's low wage rate, which was almost ten
> thousand dollars less than the wages paid to the women who occupied the
> position prior to Plaintiff who did not have family-care responsibilities; the
> decision to cut FCDA health care benefits in half with no notice and deny her
> children promised insurance; and Fiumara's discriminatory comments and
> micro-managing.

FAC ¶ 99.  "Mayor Michaels made it clear to Stoutenger and Mills that she had no interest

in remediating the discriminatory treatment they complained about.  Instead, Mayor

Michaels insisted that Plaintiff and her colleague put together for her a list of 'positive

things' they like about their jobs at FCDA." *Id.* ¶¶ 100-101.

Plaintiff alleges that, "[u]pon information and belief, Mayor Michaels did nothing to

remedy the situation at FCDA that Plaintiff put her on notice of in February 2020 until

Defendant Michaels received Charges of Discrimination from the EEOC filed by

Stoutenger and Mills in or about July 2020." *Id.*, ¶ 102.  "Shortly thereafter, on Monday,

July 6, 2020, Mayor Michaels called a meeting with FCDA staff and informed them that

Fiumara was no longer Executive Director." *Id.*, ¶ 103.  "During the meeting, Mayor

Michaels told FCDA staff that she was going to retain a law firm to conduct an

investigation, although she did not specify about what, and she said that the entire

staff would be required to sign confidentiality agreements." *Id.*, ¶ 104.  "Mayor Michaels

stated that she had heard rumors about 'what is going on' at FCDA and that it was

inappropriate for those employed by the agency to discuss work with anyone else." *Id.*, ¶

105.   Mayor Michaels then noted that employment with FCDA was "at will," and when

Stoutenger raised her hand and said she did not know what "at will" employment

meant, Michaels said that anyone working at FCDA was there of their own "free will." *Id.*,

¶¶ 106-07.  Mayor Michaels also informed the FCDA staff that she and other members of

the FCDA Board of Directors would be stopping by on occasion to ask employees

questions on an informal basis, although she did not explain what types of questions

would be asked or why. *Id.*, ¶ 108.

     Plaintiff also contends that "in September 2020, Stoutenger requested a brief

period of unpaid leave because she has a child with disabilities who required extensive

medical attention at that time and because she was coping with her own mental health

issues caused by the discriminatory and retaliatory treatment she was subjected to at

FCDA." *Id.*, ¶ 126.  "A short time later, Defendant Broadwell informed Plaintiff that when

she returned to work, her work hours would be increased by an hour each day, which

extended her regular work week from thirty-five (35) hours to forty (40) hours, and her

regular work schedule now is 9 a.m. to 5 p.m. whereas previously, before the pandemic, she regularly worked 8:30 a.m. to 4:30 p.m." *Id.*, ¶ 127.[2]  Plaintiff contends that "FCDA's decision to impose additional work hours on its staff during the pandemic disproportionately affects Plaintiff because she has school-age children at home who require supervision and she has been unable to find reliable and affordable child care because of the COVID-19 pandemic." *Id.*, ¶ 128.

In addition, Plaintiff alleges that she has been repeatedly counseled for not doing the jobs of others, such as failing to answer the phone and distribute the mail even though FCDA's then-front desk administrative assistant, Christine Peck ("Peck"), was supposed to perform these functions. *Id.*, ¶ ¶ 129-130.  Furthermore, Plaintiff contends that in a written reprimand for alleged performance issues that included calling out of work on short notice to take care of her sick child twice, Plaintiff was falsely accused of violating the confidentiality agreement that she was made to sign by Mayor Michaels. *Id.*, ¶¶ 131-135.

Plaintiff also contends that in the Spring of 2021, she complained to Broadwell that Williams, who was then her direct supervisor, relied on Plaintiff continuously to explain and reexplain to him how every facet of FCDA's housing program works even though he had been employed by FCDA since 2019. *Id.*, ¶ 136.  Moreover, Plaintiff complained to Broadwell that Williams constantly makes her perform his duties. *Id.*, ¶ 137.  As indicated above, Plaintiff contends that the new Assistant Director, Sarah Farley, thereafter dissuaded her from securing the EHV vouchers and programmatic grant from HUD

_____

[2]The Court fails to see how the new schedule increased the weekly hours of work inasmuch as the two schedules both appear to be 8-hour work days. Nonetheless, the Court considers for purposes of this motion that Defendant Broadwell increased Plaintiff's weekly hours of work.

because Farley said Williams should have the opportunity to do this work. *Id.*, ¶ 141.

Plaintiff maintains that in the months before the Complaint in this matter was filed, Broadwell continued to issue her baseless write-ups, the most recent of which threaten her termination of employment. *See id.*, ¶¶ 152-166.  As indicated above, when Plaintiff met with Broadwell to discuss what she felt was a baseless write-up, Broadwell screamed at Plaintiff and encouraged her to hand in a resignation letter and leave her position at FCDA. *Id.*, ¶ 166.  Plaintiff alleges that "[i]n addition to this ongoing illegal discriminatory and retaliatory mistreatment by Defendants FCDA and Broadwell, Stoutenger has been informed by her co-workers that since the filing of this litigation, Mayor Michaels has been heard at the FCDA office screaming and complaining about Stoutenger." *Id.*, ¶ 167.

### Causes of Action

In Count I, Plaintiff brings Title VII gender discrimination claims against Fulton and FCDA.  Plaintiff asserts that she has been "subjected to discriminatory disparate treatment because of her gender and status as a care-giver, which includes but is not limited to denial of a promised promotion, a lower wage than offered to others with no familial responsibilities who perform the same duties, denial of opportunities to work overtime, and denial of fully paid health care insurance for her and her children." FAC ¶ 171.

In Count II, Plaintiff brings Title VII retaliation claims against Fulton and FCDA. Plaintiff asserts that Fulton and FCDA retaliated against her "when she has complained about unequal treatment, including but not limited to denying Plaintiff fully paid health care insurance for her and her children, whittling down her other fringe benefits such as taking away four days of paid time off and the opportunity to take unpaid leave, issuing to her baseless warnings about alleged performance issues, and suggesting she will never be

promoted because she has engaged in protected activity."  FAC ¶ 175.

In Count III, Plaintiff brings gender discrimination claims against Mayor Michaels pursuant to 42 U.S.C. §1983.  Plaintiff asserts that Mayor Michaels "discriminated against Plaintiff in the terms and conditions of her employment, by subjecting Plaintiff to gender discrimination, thus depriving . . . Plaintiff of her rights under the Equal Protection Clause of the U.S. Constitution."  FAC ¶ 178.  Plaintiff asserts that Mayor Michaels "has been and continues to be deliberately indifferent to the ongoing unconstitutional acts described herein and grossly negligent in supervising those under her who also subjected Plaintiff to illegal gender discrimination."  FAC ¶ 179.

In Count IV, Plaintiff brings retaliation claims against Mayor Michaels pursuant to 42 U.S.C. §1983.  Plaintiff asserts that Mayor Michaels "has retaliated against Plaintiff  after she complained about the gender discrimination she has been subjected to at FCDA, thus depriving Plaintiff of her rights under the Equal Protection Clause."  FAC ¶ 184.  Plaintiff contends that Mayor Michaels "has demonstrated deliberate indifference to the ongoing unconstitutional acts described herein that has caused Plaintiff to be deprived of her rights under the Equal Protection Clause." FAC ¶ 185.  Plaintiff asserts that she has suffered injury and damages as a result of retaliatory acts that Mayor Michaels "had committed in her individual capacity and under color of state law, and the retaliation of others under her supervision that she has condoned." FAC ¶ 186.  Plaintiff contends that Mayor Michaels "has acted intentionally and with malice and/or reckless indifference to Plaintiff's federally protected rights." FAC ¶ 187.

In Count V, Plaintiff brings gender discrimination claims against all defendants pursuant to the NYSHRL.  Plaintiff contends that "Defendants have discriminated against

11

[her] in the terms and conditions of her employment by subjecting her to discriminatory differential treatment on the basis of her gender and familial status in violation of NYSHRL, which includes but is not limited to denial of a promised promotion, a lower wage than was offered to others with no familial responsibilities who performed the same duties, denial of opportunities to work overtime, and denial of fully paid health care insurance for her and her children." FAC ¶ 189.   Plaintiff also alleges that "Defendants Fiumara, Broadwell and Michaels are liable under NYSHRL as employers because they aided and abetted the disparate treatment that Plaintiff has suffered on the basis of her gender and familial status." FAC ¶ 191.

In Count VI, Plaintiff brings retaliation claims against all defendants pursuant to the NYSHRL.  In this regard, Plaintiff contends that "Defendants have subjected Plaintiff to illegal retaliation after she has engaged in protected activity by complaining about their illegal discriminatory treatment, in violation of NYSHRL, which includes but is not limited to denying Plaintiff promised fully paid health care insurance for her and her children, whittling down her other fringe benefits such as taking away four days of paid time off, issuing to her baseless warnings about alleged performance issues, by suggesting that she will never be promoted because she has engaged in protected activity, and by threatening to fire her." FAC ¶ 195.  Plaintiff also asserts that "Defendants Fiumara, Broadwell and Michaels are liable under NYSHRL as employers because they aided and abetted the retaliation that Plaintiff has suffered." FAC ¶ 196.

## III.    STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The Court "must accept as true all of the [factual] allegations contained in a complaint[,]" but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted).  "While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge [plaintiffs'] claims across the line from conceivable to plausible.'" *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007)(quoting *Twombly*, 550 U.S. at 570); *see Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 184 (2d Cir. 2012)(Plausibility is "a standard lower than probability.").  A claim will only have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at  678.  This pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed me accusation" in order to withstand scrutiny. *Id.* (citing Twombly, 550 U.S. at 555).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

## IV.   DISCUSSION

### a.   Exhaustion of Administrative Remedies

The FAC asserts that Plaintiff "filled a Charge of Discrimination alleging that she had been subjected to illegal discrimination and retaliation during her employment at FCDA with the United States Equal Employment Opportunity Commission ("EEOC") on July 24, 2020." FAC ¶ 18.  Defendants contend that it is undisputed that Plaintiff did not file a charge of discrimination with the EEOC against Fulton, and therefore the Title VII

claims against it must be dismissed with prejudice as having not been administratively exhausted. *See* Defs. Mem. L., Dkt. 17-1, at 3-4.  Plaintiff does not specifically assert that Fulton was named in the EEOC charge. *See* Pl. Mem. L., Dkt. 23, at 8-10.  Rather, she contends that whether she exhausted administrative remedies as to Fulton is Defendants' burden to prove as an affirmative defense, and argues that Defendants have failed to meet this burden. *See id.*  Plaintiff also argues that "'claims that were not asserted before the [EEOC] may be pursued in a subsequent federal court action if they are reasonably related to those that were filed with the [EEOC].'" *Id*. at 9 (quoting *Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003)).  Furthermore, Plaintiff maintains that she "has alleged that Fulton had actual knowledge of her EEOC Charge when Mayor Michaels received it from the EEOC shortly after it was filed in July 2020." *Id.* (citing FAC, ¶ 102).  In their Reply, Defendants assert that they are not challenging whether Plaintiff exhausted her Title VII claims at the EEOC, but instead are challenging Plaintiff's failure to name Fulton as a party to a discrimination charge filed with the EEOC.  Defs. Reply Mem. L., Dkt. 23, at 7-8.  Defendants argue that when a defendant challenges a plaintiff's failure to exhaust her administrative remedies with respect to a "party" rather than a "claim," courts apply the "identity of interest" theory rather than the "reasonably related" theory raised by Plaintiff. *Id.* at 8.  Defendants contend that because all of the identity of interest factors weigh in favor of Fulton, and because Plaintiff was represented by counsel during her EEOC proceeding, the Court should dismiss Plaintiff's Title VII claims against Fulton. *Id.* at 8-10.

### Analysis

"Before bringing suit under Title VII, a plaintiff must exhaust available administrative remedies by filing a timely complaint with the EEOC or an authorized state agency." *Payne*

14

*v. McGettigan's Mgmt. Servs. LLC*, No. 19CV1517 (DLC), 2020 WL 2731996, at *3 (S.D.N.Y. May 26, 2020)(citing 42 U.S.C. § 2000e-5(f)(1); *Duplan v. City of New York*, 888 F.3d 612, 621 (2d Cir. 2018)).  "A plaintiff can generally bring a lawsuit against only those entities named in the initial EEOC charge." *Id.* (citing *Johnson v. Palma*, 931 F.2d 203, 209 (2d Cir. 1991); 42 U.S.C. § 2000e-5(f)(1)(providing that after administrative exhaustion "a civil action may be brought against the respondent named in the charge")). The purpose of the exhaustion requirement is "to give the administrative agency the opportunity to investigate, mediate, and take remedial action." *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 384 (2d Cir. 2015)(citation omitted).

The burden of pleading and proving failure to exhaust administrative remedies pursuant to Title VII "lies with [the] defendants and operates as an affirmative defense." *Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 491 (2d Cir. 2018).  "An affirmative defense is grounds for dismissal when it is clear from the face of the complaint and documents integral thereto that plaintiff's claims are barred." *Payne*, 2020 WL 2731996, at *3 (citing *Sewell v. Bernardin*, 795 F.3d 337, 339 (2d Cir. 2015); *Holowecki v. Fed. Express Corp.*, 440 F.3d 558, 565-66 (2d Cir. 2006)).  Defendants' assertion in their motion that Plaintiff failed to exhaust administrative remedies by failing to name Fulton in the EEOC charge satisfies the pleading requirement of *Hardaway*.  That leaves the question whether, on the face of the FAC and documents integral thereto, it is clear that Plaintiff's Title VII claims against Fulton are barred.

The law on administrative exhaustion in Title VII cases contains two recognized exceptions relevant here: the "reasonably related" exception as referenced by Plaintiff, *see Deravin*, 335 F.3d at 200–201, and the "identity of interest" exception as referenced by

Defendants.  *See Johnson*, 931 F.2d at 209 (the identity of interest exception allows a

plaintiff to bring suit against a party not named in the EEOC charge that is  sufficiently

related to the party that was named).  As indicated, Plaintiff proceeds under the

reasonably related exception.

> As the Second Circuit has stated:

> As a precondition to filing a Title VII claim in federal court, a plaintiff must
> first pursue available administrative remedies and file a timely complaint with
> the EEOC.  We have recognized, however, that claims that were not
> asserted before the EEOC may be pursued in a subsequent federal court
> action if they are reasonably related to those that were filed with the agency.
> A claim is considered reasonably related if the conduct complained of would
> fall within the scope of the EEOC investigation which can reasonably be
> expected to grow out of the charge that was made. This exception to the
> exhaustion requirement is essentially an allowance of loose pleading and is
> based on the recognition that EEOC charges frequently are filled out by
> employees without the benefit of counsel and that their primary purpose is to
> alert the EEOC to the discrimination that a plaintiff claims he is suffering.... In
> determining whether claims are reasonably related, the focus should be on
> the factual allegations made in the EEOC charge itself, describing the
> discriminatory conduct about which a plaintiff is grieving.

*Deravin*, 335 F.3d 195, 200–201 (2d Cir. 2003)(cleaned up).  "The central question is

whether the complaint filed with the EEOC gave that agency 'adequate notice to

investigate discrimination on both bases.'" *Williams v. N.Y. City Hous. Auth.*, 458 F.3d 67,

70 (2d Cir. 2006)(quoting *Deravin*, 335 F.3d at 202).  In addition, "[a] claim alleging

retaliation by an employer against an employee for filing a discrimination charge is one

type of claim [the Second Circuit has] recognized as reasonably related to the underlying

discrimination charge." *Legnani v. Alitalia Linee Aeree Italiane, S.P.A*, 274 F.3d 683, 686

(2d Cir. 2001)(quotation marks and citations omitted).

Here, the two Title VII claims asserted in the FAC are brought against both Fulton

and FCDA.  *See* FAC ¶¶ 169-172 (Count I - Gender Discrimination), 173-176 (Count II -

Retaliation).  Further, the allegations in the FAC supporting these claims are based almost exclusively on conduct occurring at FCDA, and Plaintiff maintains that FCDA and Fulton operated as an integrated enterprise making them jointly responsible for the same conduct under the single employer doctrine.  Thus, it would appear that the Title VII claims asserted against Fulton are the same as the Title VII claims asserted against FCDA, obviating the need to rely on the "reasonably related" exception where, as here, Plaintiff was purportedly represented by counsel at the EEOC stage.  Moreover, it is unclear how the EEOC could investigate, mediate, and take remedial action against Fulton for its alleged gender discrimination if it was not named or mentioned in the EEOC charge.

However, even though the EEOC charge is referenced in the FAC, the parties have not supplied the charge itself.  The face of the FAC does not allow for a determination whether the EEOC charge described the involvement of Fulton such to apply the reasonably related exception to the gender discrimination claim against Fulton.  *See Johnson v. Morrison v. Foerster LLP*, 14–CV–0428 (JMF), 2015 WL 845723, at 4 n. 2 (S.D.N.Y. Feb. 26, 2015); *Berlyavsky v. New York City Dep't of Env't Prot.*, No. 14-CV-03217 KAM RER, 2015 WL 5772266, at *5, n. 7 E.D.N.Y. Aug. 28, 2015), *rep. & rec. adopted as modified*, 2015 WL 5772255 (E.D.N.Y. Sept. 30, 2015).  Furthermore, the retaliation claim potentially against Fulton that arose after Plaintiff filed her EEOC charge, *see* FAC ¶¶ 102-09 (after Mayor Michaels received the EEOC charge, she called a meeting, informed the staff that Fiumara was no longer Executive Director, and made several announcements including that staff would have to sign confidentiality agreements), ¶ 167 ("Stoutenger has been informed by her co-workers that since the filing of this litigation, Mayor Michaels has been heard at the FCDA office screaming and complaining

17

about Stoutenger."),[3] may be reasonably related to the claims in the EEOC charge.  *See Legnani*, 274 F.3d at 686.  Accordingly, this branch of Defendants' motion is denied without prejudice to renewal.  *See Berlyavsky,* 2015 WL 5772266, at *5.  Because, as discussed below, the Title VII claims will be dismissed without prejudice and with leave to replead, Plaintiff is directed to file a copy of the EEOC charge with any amended pleading.

Assuming *arguendo* that the "reasonably related" exception does not apply, the Court turns to the "identity of interest" exception raised by Defendants.  Under a limited exception to the general rule that a defendant must be named in the EEOC charge, a Title VII action may "proceed against an unnamed party where there is a clear identity of interest between the unnamed defendant and the party named in the administrative charge." *Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 619 (2d Cir. 1999)(citation omitted); *see Johnson*, 931 F.2d at 209; *Duverny v. Hercules Med. P.C.*, No. 18CV07652 (DLC), 2020 WL 1033048, at *9 (S.D.N.Y. Mar. 3, 2020).  "In adopting the identity of interest exception, the Second Circuit observed that EEOC charges 'generally are filed by parties not versed in the vagaries of Title VII and its jurisdictional and pleading requirements.'" *Payne*, 2020 WL 2731996, at *4 (quoting *Johnson*, 931 F.2d at 209).  Because of this, the Second Circuit has taken "a flexible stance in interpreting Title VII's procedural provisions . . . so as not to frustrate Title VII's remedial goals." *Johnson*, 931 F.2d at 209 (internal quotation marks and citations omitted); *see Juhua Han v. Kuni's Corp.*, No. 19-CV-06265 (RA), 2020 WL 2614726, at *12 (S.D.N.Y. May 22, 2020).  "Some district court decisions

---

[3]The Court recognizes that, as Defendants argue, Mayor Michaels's actions may have been taken in her role as Chairperson of the FCDA's Board of Directors, not in her role as chief executive of Fulton.

have reasoned" that *Johnson*'s reference to those "not versed in the vagaries of Title VII and its jurisdictional and pleading requirements" renders the exception "unavailable to plaintiffs whose EEOC charges were filed by counsel." *Payne*, 2020 WL 2731996, at *4; *see Juhua Han*, 2020 WL 2614726, at *12 ("[T]he identity of interest exception does not typically apply where an individual is represented by counsel at the time that she files her EEOC charge.")(citing *Ruiz v. New Avon LLC*, No. 18-CV-9033 (VSB), 2019 WL 4601847, at *11 (S.D.N.Y. Sept. 22, 2019)("Courts therefore routinely decline to apply the identity of interest exception where complainants were represented by counsel familiar with the applicable law when they filed their EEOC charge.")(collecting cases)). "But the Second Circuit has not imposed such a limitation. While the Second Circuit observed that EEOC charges were 'generally' filed without the assistance of counsel, it created a multi-part test that did not include a complainant's *pro se* status as one element of the test." *Payne*, 2020 WL 2731996, at *4. In this District, Judge D'Agostino has stated that in the "absence of Second Circuit authority" stating otherwise, a "plaintiff's legal representation at the time he or she filed a complaint with the EEOC is simply a relevant consideration in evaluating the first and fourth" identity of interest factors. *See Crosby v. McDonald's of Guilderland, LLC*, No. 1:17-CV-1160 (MAD/DEP), 2018 WL 2077884, at *10, n. 3  (N.D.N.Y. May 2, 2018). The identity of interest factors are:

> 1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint; 2) whether, under the circumstances, the interests of a named [party] are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings; 3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; 4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through

the named party.

*Johnson,* 931 F.2d at 209-10 (quoting *Glus v. G.C. Murphy Co.*, 562 F.2d 880, 888 (3d Cir. 1977)).  "In addition to these factors, *Johnson* implied a fifth factor relevant to the identity of interest inquiry: whether the defendant, although not named as a respondent in the caption, is named in the body of the charges as having played a role in the discrimination." *Batiste v. City Univ. of New York*, No. 16-CV-03358 (VEC), 2017 WL 2912525, at *3 (S.D.N.Y. July 7, 2017).  "No single factor is dispositive; courts weigh the totality of the evidence." *Duverny*, 2020 WL 1033048, at *9 (citing *Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1242 (2d Cir. 1995)).

Here, the face of the FAC does not allow for determination whether these factors are satisfied.  Further, Defendants raised the identity of interest issue in their reply and therefore Plaintiff has not responded to Defendants' arguments.  Under these circumstances, the Court will deny the motion in this regard and allow Defendants to raise the issue on a motion for summary judgment.  *See Shannon v. Credit Agricole Sec. (USA) Inc.*, No. 17-CV-00667 (AJN), 2018 WL 1474390, at *3 (S.D.N.Y. Mar. 22, 2018)("When there is insufficient information at the motion to dismiss stage for a court to determine whether named and unnamed defendants share an identity of interest, it is appropriate to deny the motion to dismiss and revisit the issue on a motion for summary judgment."); *Kurlender v. Ironside Grp., Inc.*, No. CV183839 (JFB/AYS), 2019 WL 1318363, at *11 (E.D.N.Y. Jan. 4, 2019)("When it is unclear whether the identity of interest exception applies, courts routinely permit the unnamed parties to proceed as defendants in the action.")(collecting cases), *rep. & rec. adopted*, 2019 WL 1317405 (E.D.N.Y. Mar. 22, 2019).  "Ultimately, it is the plaintiff who has the burden of proving that the identity of

interest exception applies." *Crosby*, 2018 WL 2077884, at *10.  Defendants' motion on this ground is denied without prejudice to renewal.

### b. Sufficient Number of Employees for Title VII Claims

Defendants argue that Plaintiff's Title VII claims against FCDA must be dismissed because Plaintiff fails to allege facts indicating that FCDA employs fifteen or more employees as required by 42 U.S.C. § 2000e(b).  Defendants also argue that Plaintiff fails to allege facts showing that Fulton was her "employer" under Title VII, and fails to allege facts indicating that Fulton employs fifteen or more employees.  Plaintiff contends that "[i]n her First Amended Complaint, [she] acknowledges that FCDA is her direct employer, but also alleges that she is employed by both FCDA and Fulton." Dkt. 23 at 11 (citing FAC, ¶¶ 28, 170, 174).  Plaintiff argues that she has pled sufficient facts demonstrating that Fulton and FCDA operated as a single integrated enterprise under the single employer doctrine for purposes of Title VII and NYSHRL liability.  *Id.*  She further asserts that inferences from the FAC are sufficient to establish, for purposes of this motion, that Fulton and FCDA together have fifteen or more employees.

### 42 U.S.C. §2000e(b)

"'[T]he existence of an employer-employee relationship is a primary element of [a] Title VII claim[ ].'" *Brown v. Daikin Am., Inc.*, 756 F.3d 219, 226 (2d Cir. 2014)(quoting *Gulino v. N.Y. State Educ. Dep't*, 460 F.3d 361, 370 (2d Cir. 2006) and citing 42 U.S.C. § 2000e(b)).  "An employer-employee relationship is also required to sustain analogous claims under the NYSHRL." *Id.* (citing *Eisenberg v. Advance Relocation & Storage, Inc.*, 237 F.3d 111, 113 (2d Cir. 2000)).  Title VII defines an "employer" as a "person engaged in an industry affecting commerce who has fifteen or more employees for each working

day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person[.]" 42 U.S.C. § 2000e(b).  The Supreme Court has held that "the threshold number of employees for application of Title VII is an element of a plaintiff's claim for relief, not a jurisdictional issue." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 516, 126 S. Ct. 1235, 163 L. Ed.2d 1097 (2006).  "As a result, to survive a motion to dismiss, a plaintiff must allege facts that 'plausibly support [] an allegation' that her employer is covered by Title VII." *Lora v. Centralized Mgmt. Serv., Inc.*, 2020 U.S. Dist. LEXIS 104058, *7, 2020 WL 3173025, at *3 (S.D.N.Y. June 12, 2020)(citing *Eyeghe v. Thierry*, No. 14-CV-1914 (JMF), 2014 WL 5242605, at *1 (S.D.N.Y. Oct. 15, 2014)(dismissing claim under Title VII where plaintiff failed to allege that the employer "ha[d] fifteen or more employees").  "Conversely, dismissal is warranted 'if the complaint shows on its face that the element of the statutory coverage is lacking.'" *Id.* (quoting *Da Silva v. Kinsho Intern. Corp.*, 229 F.3d 358, 365-66 & n.9 (2d Cir. 2000)); *see also id.* at *9 ("In the absence of such allegations regarding the size of her employer, dismissal of Plaintiff's Title VII claims is warranted."); *Da Silva*, 229 F.3d at 365–66 ("[A] Title VII defendant wishing to defeat a plaintiff's claim on the ground that it lacks fifteen employees is normally entitled to seek dismissal if the complaint shows on its face that the element of statutory coverage is lacking."); *id.*, at 366, n. 9 ("If, for example, a complaint alleged fewer than fifteen employees, the complaint would be subject to dismissal under Rule 12(b)(6) for failure to state a claim."); *Torres v. Cortland ENT, P.C.*, 2017 U.S. Dist. LEXIS 92856, *4-*5 (N.D.N.Y. June 16, 2017)(dismissing Plaintiff's Title VII claims for "falling short of the pleading requirement that Defendant employs a sufficient number of employees to qualify as an employer within the meaning of Title VII"); *Luna v. N. Babylon Teacher's Org.*, 11 F.

Supp. 3d 396, 401 (E.D.N.Y. 2014)("[L]iability under Title VII does not extend to employers with fewer than fifteen employees.")(citing *Arculeo v. On-Site Sales & Mktg., LLC*, 425 F.3d 193, 202-03 (2d Cir. 2005)).

## Single Employer Doctrine

Plaintiff does not specifically allege that FCDA employs fifteen or more employees such to satisfy § 2000e(b).  Instead, she contends that she was employed by both FCDA and Fulton, *see* FAC at ¶¶ 170, 174, and argues that under the single employer doctrine, the aggregate number of employees at FCDA and Fulton satisfies §2000e(b)'s numerosity requirement. *See* Dkt. 23, at 11-18.

"An entity that is not formally the plaintiff's direct employer may also be liable under Title VII." *Popat v. Levy*, 328 F. Supp. 3d 106, 117 (W.D.N.Y. 2018)(citing *Kology v. My Space NYC Corp.*, 177 F. Supp.3d 778, 781 (E.D.N.Y. 2016). "That is, 'courts construe the term 'employer' functionally, to encompass persons who are not employers in conventional terms, but who nevertheless control some aspect of an employee's compensation or terms, conditions, or privileges of employment.'" *Id.* (quoting *Kology*, 177 F. Supp.3d at 781 (quotation omitted)).  "In the context of Title VII, there are two 'recognized doctrines that enable an employee in certain circumstances to assert employer liability against an entity that is not formally his or her employer.'" *Shiflett v. Scores Holding Co.*, 601 F. App'x 28, 30 (2d Cir. 2015) (quoting *Arculeo v. On-Site Sales & Mktg., LLC*, 425 F.3d 193, 197 (2d Cir. 2005)).  These are the "single employer" doctrine "where two nominally separate entities are actually part of a single integrated enterprise," *Arculeo*, 425 F.3d at 198 (citation omitted), and the "joint employer" doctrine which does not involve a single integrated enterprise but rather "separate legal entities" that "handle

23

certain aspects of their employer-employee relationship jointly." *Id.* (alterations, quotation marks, and citation omitted).  As indicated, Plaintiff proceeds under the single employer doctrine.

"A 'single employer' situation exists where two nominally separate entities are actually part of a single integrated enterprise." *Id.* (citation omitted).  "[E]xamples may be parent and wholly-owned subsidiary corporations, or separate corporations under common ownership and management." *Id.*  Under the single employer doctrine, "all the employees of the constituent entities are employees of the overarching integrated entity, and all of those employees may be aggregated to determine whether it employs fifteen employees." *Id.* at 199.  "[T]he policy underlying the single employer doctrine is the fairness of imposing liability for labor infractions where two nominally independent entities do not act under an arm's length relationship." *Murray v. Miner*, 74 F.3d 402, 405 (2d Cir.1996).  "That policy is most implicated where one entity actually had control over the labor relations of the other entity, and, thus, bears direct responsibility for the alleged wrong." *Id.*

"'To prevail in an employment action against a defendant who is not the plaintiff's direct employer, the plaintiff must establish that the defendant is part of an 'integrated enterprise' with the employer, thus making one liable for the illegal acts of the other.'" *Brown,* 756 F. 3d at 26 (quoting *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 341 (2d Cir. 2000)).  "In essence, a court must consider whether 'an employee, formally employed by one entity, . . . has been assigned to work in circumstances that justify the conclusion that the employee is at the same time constructively employed by another entity.'" *Id.* (quoting *Arculeo*, 425 F.3d at 198).  The courts in this Circuit apply four factors to determine whether two nominally distinct entities are actually a single employer: "(1)

interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control." *Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1240-41 (2d Cir. 1995) (internal citations and quotation marks omitted); *see Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 155-56 (2d Cir. 2014)(applying the *Cook* four-factor test); *Brown*, 756 F.3d at 226-27 (same).  Courts have applied this same four-factor test to determine whether two or more entities constitute a "single employer" under the NYSHRL. *See, e.g., Turley*, 774 F.3d at 156.

"The employee satisfies [the integrated enterprise] rule if [s]he shows participation by the defendant that is 'sufficient and necessary to the total employment process [of the employer], even absent total control or ultimate authority over hiring decisions.'" *Parker*, 204 F.3d at 341 (quoting *Cook*, 69 F.3d at 1241).  "A crucial element of the inquiry focuses on whether the two enterprises exhibit 'centralized control of labor relations,' including tasks such as handling job applications, approving personnel status reports, and exercising veto power over major employment decisions." *Id.* (citing *Cook*, 69 F.3d at 1241); *see also Murray*, 74 F.3d at 404 ("Although no one factor is determinative . . . control of labor relations is the central concern.")(citations omitted); *Stinson v. City Univ. of New York*, No. 17-CV-3949 (KBF), 2018 WL 2727886, at *9 (S.D.N.Y. June 6, 2018)("The Second Circuit has placed particular emphasis on the second [*Cook*] factor, focusing on the entity that made final decisions regarding employment matters related to discrimination.")(citations omitted); *Juhua Han,* 2020 U.S. Dist. LEXIS 90460, at *8 ("'Although no one factor controls the analysis, the second, 'centralized control of labor relations,' is the most significant.'")(quoting *Turley*, 774 F.3d at 156 and citing *Murray*, 74 F.3d at 405 (explaining that "the policy underlying the single employer doctrine" is "most

implicated where one entity actually had control over the labor relations of the other entity, and, thus, bears direct responsibility for the alleged wrong")).

 "Whether two related entities are sufficiently integrated to be treated as a single employer is generally a question of fact not suitable to resolution on a motion to dismiss." *Brown*, 756 F.3d at 226 (citations omitted); *see United States EEOC v. Birchez Assocs., LLC*, No. 1:19-CV-810 (LEK/DJS), 2021 U.S. Dist. LEXIS 55205, at *4 (N.D.N.Y. Mar. 24, 2021)("The integrated enterprise doctrine involves a fact-specific inquiry.")(internal quotation marks and citations omitted).  "Nevertheless, the plaintiff 'must do more than simply state legal conclusions and recite the elements of the 'single employer' standard to survive a motion to dismiss.'" *Juhua Han*, 2020 U.S. Dist. LEXIS 90460, at *20 (quoting *Fried v. LVI Servs.*, No. 10 Civ. 9308 (JSR), 2011 U.S. Dist. LEXIS 57639, 2011 WL 2119748, at *5 (S.D.N.Y. May 23, 2011)).  "And '[a]lthough the determination of whether two related entities are sufficiently integrated to be treated as a single employer is generally a question of fact, . . . where a plaintiff's allegations are so inadequate that they fail to put a defendant on notice of the theory of employer liability, dismissal is appropriate.'" *Id.* at *20-21 (quoting *Ruiz v. New Avon LLC*, 2019 U.S. Dist. LEXIS 161457, 2019 WL 4601847, at *13  (S.D.N.Y. Sept. 22, 2019) (alterations, internal quotation marks, and citation omitted), and citing *Stinson*, 2018 U.S. Dist. LEXIS 95300, 2018 WL 2727886, at *9 (S.D.N.Y. June 6, 2018) ("Indeed, where the four [*Cook*] factors are not adequately alleged in the pleadings, courts have ruled that the plaintiff[] may not pursue the single integrated employer theory.")).

 Here, Defendants' present several arguments in their reply that challenge Plaintiff's theory that FCDA and Fulton are a single integrated entity.  While Defendants' arguments

may ultimately prove to be correct, the issues cannot be resolved on this motion as the Court must accept Plaintiff's factual allegations as true and draw reasonable inferences on her behalf.  Doing so plausibly "shows participation by [Fulton] that is sufficient and necessary to the total employment process [of FCDA], even absent total control or ultimate authority over" decisions such as hiring and terms of employment.  *Parker*, 204 F.3d at 341.  Furthermore, the asserted facts plausibly indicate that Fulton and FCDA exhibit centralized control of labor relations, including tasks such as handling job applications at least at the executive director level, and exercising power over major employment decisions such as those pertaining to employee health insurance and PTO. Given the fact-specific nature of applying the integrated enterprise rule, and although the FAC fails to specifically reference the four *Cook* factors, *see Stinson*, 2018 WL 2727886, at *9, the motion on this ground will be denied.

### Fifteen or More Employees

That being the case, however, the FAC fails to plausibly indicate that the integrated enterprise employs 15 or more employees within the meaning of § 2000e(b).  The FAC merely alleges that Plaintiff "has worked . . . at FCDA since 2019," FAC at ¶ 8, and that "[a]t all relevant times to this action, Defendants City of Fulton and Fulton Community Development Agency have employed Plaintiff within the meaning of Title VII." *Id.,* ¶ 170; *see id.,* ¶ 174 (same as ¶ 170).  Alleging that Plaintiff is employed within the meaning of Title VII may be sufficient to put Defendants on notice that she brings claims under Title VII, but is not a factual allegation plausibly indicating that FCDA had at relevant times 15 or more employees as required by § 2000e(b).  *See Torres*, 2017 U.S. Dist. LEXIS 92856 at *7 (Alleging that a defendant is "an employer within the meaning of Title VII . . . is not a

factual allegation, but rather a legal conclusion masquerading as a factual conclusion.").

In her memorandum of law, Plaintiff asks the Court to infer from the allegations in the FAC that there was an aggregate of 15 or more employees at FCDA and Fulton. However, the FAC's allegations do not support a plausible inference that at any particular time the total of the referenced individuals satisfies §2000e(b)'s requirement.  In counting the FCDA employees referenced in the FAC, Plaintiff indicates that some were replaced by others, *see* Dkt. 23 at 16 ("(3) Williams, the man who replaced (4) Peggy Birkhead as the Housing Services Supervisor; (5) Defendant Fiumara who was replaced by (6) Defendant Broadwell as FCDA's Executive Director;"), that one worked at FCDA but was fired, *id.* ("(8) Christine Peck who worked as the FCDA receptionist until she was fired"),[4] and that "since January 2021" FCDA "hired several additional staffers" but "within weeks of their hire, these new FCDA employees quit their positions."  FAC ¶¶ 148-149.  Further, Defendant Fiumara left his position as the Executive Director of FCDA in July 2020 (FAC at ¶ 13) and was not replaced as Executive Director by Defendant Broadwell until December 2020 (FAC at ¶ 11).  In addition, the FAC indicates that Sarah Farley, one of the FCDA employees Plaintiff counts in support of the 15-employee threshold, was a "new" employee at FCDA "in or about April 2020." *See* FAC at ¶¶ 139-141.  At best, the FAC identifies only a handful of employees at FCDA during any one period of time.  The allegations in the FAC do not plausibly support an inference that FCDA employed at relevant times 15 or more employees sufficient to meet §2000e(b)'s threshold requirement.  Further, Defendants point to the uncertainty of the number of FCDA

---

[4] The FAC does not indicate when Peck was fired.

employees at any particular time, and argue that although Plaintiff contends that Defendant Michaels and seven City of Fulton Common Council members should be counted as Fulton employees, Plaintiff provides no case law to support this contention. *See* Dkt. No. 26 at p. 7.

Plaintiff fails to plausibly allege that the integrated enterprise employed 15 or more employees at relevant times.  First, there are no specific allegations in the FAC that FCDA and Fulton are an integrated enterprise, or that the integrated enterprise employs 15 or more employees at relevant times.  Second, the FAC does not allege that Mayor Michaels and the City of Fulton Common Council members are employees of Fulton for purposes of Title VII, and Plaintiff provides no authority supporting this proposition even if made.  To the contrary, 42 U.S.C. § 2000e(f) provides that "the term 'employee' shall not include any person elected to public office in any State or political subdivision of any State by the qualified voters thereof."  And third, given the uncertainty of the number of FCDA employees at any particular time, even adding Mayor Michaels and seven Common Council members as Fulton employees does not plausibly establish that the integrated enterprise employs 15 more employees at relevant times.  Accordingly, the Court grants Defendants' motion to dismiss the Title VII claims. This conclusion notwithstanding, Plaintiff may be able to amend her complaint to plausibly allege that FCDA, or that FCDA/Fulton, is an "employer" under Title VII.  Accordingly, the Court's dismissal is without prejudice to repleading, and Plaintiff is granted leave to file a second amended complaint to, in good faith, attempt to cure the defects in her pleadings.

### c.  Section 1983 Claims Against Mayor Michaels

Invoking § 1983, Plaintiff brings claims of intentional discrimination and retaliation in

violation of the Equal Protection Clause against Mayor Michaels.  Defendants argue that the claims should be dismissed because the FAC fails to plausibly indicate that Mayor Michaels was personally involved in any adverse action, and because the claims lack substantive merit.

### Personal Involvement

"Unlike Title VII, which can only be brought against an employer, a § 1983 discrimination claim can be brought against 'any individual responsible for the discrimination.'" *Peck v. Cty. of Onondaga, New York*, No. 5:21-CV-651, 2021 WL 3710546, at *9 (N.D.N.Y. Aug. 20, 2021), *recon. denied*, 2021 WL 4394603 (N.D.N.Y. Sept. 27, 2021) (quoting *Naumovski v. Norris*, 934 F.3d 200, 212 (2d Cir. 2019)(cleaned up)).  "However, a plaintiff must prove that the individual she pursues under § 1983 was personally involved in her alleged constitutional violation." *Id.* (citing *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006)).

"A defendant in a § 1983 action may not be held liable for damages for constitutional violations merely because [s]he held a high position of authority." *Victory v. Pataki*, 814 F.3d 47, 67 (2d Cir. 2016).  "Traditionally, a plaintiff advancing a claim of § 1983 discrimination in the Second Circuit would have to prove a defendant's personal involvement by providing evidence that: (1) the defendant was a direct participant in the alleged violation; (2) the defendant failed to correct the violation after learning about it through a report or appeal; (3) the defendant created or allowed to continue a policy or custom under which the violation occurred; (4) the defendant was grossly negligent in supervising subordinates who committed the violation; or (5) the defendant exhibited deliberate indifference by not acting on information suggesting that the violations were

occurring." *Peck*, 2021 WL 3710546, at *9 (citing *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013)).  However, in *Iqbal*, the Supreme Court held that "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." 556 U.S. at 676; *see Avent v. Keybank*, No. 21-CV-01466 (CM), 2021 WL 1253840, at *2–3 (S.D.N.Y. Apr. 1, 2021)("A defendant may not be held liable under § 1983 solely because that defendant employs or supervises a person who violated the plaintiff's rights.")(citing *Iqbal*, 556 U.S. at 676).  After *Iqbal*, the Second Circuit held that "there is no special rule for supervisory liability. Instead, a plaintiff must plead and prove that each [g]overnment-official defendant, through the official's own individual actions, has violated the Constitution." *Tangreti v. Bachmann,* 983 F.3d 609, 618 (2d Cir. 2020)(internal citations and quotation marks omitted).  That is to say, "[t]he violation must be established against the supervisory official directly." *Id.*   A plaintiff cannot rely "on a separate test of liability specific to supervisors." *Id.,* at 619.  Rather, "[t]o hold a state official liable under § 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability." *Id.,* at 620.

### Section 1983 Discrimination Claim against Mayor Michaels

"To state a valid claim under § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. Cnty. of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir. 1994)).  Section 1983 does not create any independent substantive right, but rather "provides a civil claim for damages" to

31

"redress . . . the deprivation of [federal] rights established elsewhere." *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999).

Plaintiff brings her Section 1983 discrimination claim against Mayor Michaels pursuant to the Fourteenth Amendment's Equal Protection Clause.  This "commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985) (citation omitted). "To state an equal protection claim, a plaintiff must allege that [s]he is a member of a suspect or quasi-suspect class of persons; such classes include, but are not limited to, classes identified by race, gender, alienage, or national origin." *Avent*, 2021 WL 1253840, at *3 (citing *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995); *Myers v. Cnty. of Orange*, 157 F.3d 66, 75 (2d Cir. 1998)).  "A plaintiff asserting an equal protection claim must also allege facts showing that the defendants have purposefully discriminated against [her] because of [her] membership in that class." *Id*.  (citing *Turkmen v. Hasty*, 789 F.3d 218, 252 (2d Cir. 2015), *rev'd and vacated in part on other grounds sub nom.*, *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017); *Giano*, 54 F.3d at 1057).  However, "'purposeful discrimination requires more than intent as volition or intent as awareness of consequences.  It instead involves a decisionmaker's undertaking a course of action because of, not merely in spite of, [the action's] adverse effects upon an identifiable group.'" *Turkmen*, 789 F.3d at 252 (quoting *Iqbal*, 556 U.S. at 676-77).

"Section 1983 employment discrimination claims asserted as equal protection violations are evaluated under the same standards as Title VII claims."  *Chick v. Cnty. of Suffolk*, 546 Fed. Appx. 58, 59 (2d Cir. 2013); *see Feingold v. New York*, 366 F.3d 138,

159 (2d Cir. 2004)("Where color of state law is undisputed, a plaintiff's Section 1983 discrimination claim parallels a Title VII claim.").  "To plead a Title VII discrimination claim, a plaintiff must 'establish a *prima facie* case of ... discrimination by demonstrating that (1) [s]he was within the protected class; (2) [s]he was qualified for the position; (3) [s]he was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination.'" *Farooq v. City of New York*, No. 20-3185, 2022 WL 793117, at *2 (2d Cir. Mar. 16, 2022)(Summary Order)(quoting *Menaker v. Hofstra Univ.*, 935 F.3d 20, 30 (2d Cir. 2019)(cleaned up)).  "'The facts required ... to be alleged in the complaint need not give plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination. They need only give plausible support to a minimal inference of discriminatory motivation.'" *Id.* (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015)). "A plaintiff may satisfy this burden by alleging facts such as 'the employer's criticism of the plaintiff's performance in [class-based] degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's [adverse employment action].'" *Id.* (quoting *Littlejohn*, 795 F.3d at 312).

"[A] plaintiff pursuing a claim for employment discrimination under § 1983 rather than Title VII must establish that the defendant's discriminatory intent was a 'but-for' cause of the adverse employment action or the hostile environment."  *Naumovski*, 934 F.3d at 214.  As the Supreme Court has explained, the "but-for" standard requires that the Plaintiff show "that the harm would not have occurred in the absence of—that is, but for—the defendant's conduct." *Id.* at 213 (quoting *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S.

338, 346-47 (2013)).

**Analysis**

In the § 1983 gender discrimination claim, Plaintiff alleges that Mayor Michaels "has been and continues to be deliberately indifferent to the ongoing unconstitutional acts described herein and grossly negligent in supervising those under her who also subjected Plaintiff to illegal gender discrimination." *See* FAC at ¶ 179.  This allegation does not, by itself, allege that Mayor Michaels was directly involved in any of the acts which Plaintiff contends constitute adverse employment actions.  Thus, this aspect of the claim must be dismissed. *See Tangreti*, 983 F.3d at 618-620.

Separately, Plaintiff alleges that in January 2021, she "was informed that FCDA would no longer [] provide the $5000 stipend to be used toward heath care costs," and instead "FCDA now offers a health care insurance plan that is too expensive for Plaintiff to afford." FAC ¶¶ 121-122.  Plaintiff also alleges that "FCDA management notified the staff that the four (4) paid personal days they had been previously afforded would be eliminated."  FAC ¶ 123.  Plaintiff alleges that "when she complained about these material changes to her employment benefits, Defendant Broadwell told [her] that the decision to take away the $5000 health care stipend and the four paid personal days was made by Mayor Michaels and he could not get involved because of the 'politics' that motivated the Mayor's decisions."  FAC ¶ 124.  By Plaintiff's allegations, these changes to the employment benefits that Mayor Michaels purportedly orchestrated concerned all staff members, not simply Plaintiff, women on the staff, or working mothers on the staff.  Thus, even assuming that the changes to the employment benefits disproportionately affected Plaintiff as a working mother, Plaintiff has not alleged facts plausibly demonstrating that

34

Mayor Michaels took this action because of, not merely in spite of, the actions' adverse effects upon an identifiable group. *See Iqbal*, 556 U.S. at 676-77*; Turkmen*, 789 F.3d at 252; *Naumovski*, 934 F.3d at 214.  Further, Plaintiff has not alleged that Mayor Michaels made any invidious comments about women in the workplace, or made any "stereotypical remarks about the incompatibility of motherhood and employment [including stereotyping women as caregivers]" which could indicate that "gender played a part in an employment decision." *Back v. Hasting on the Hudson Union Free Sch. Dist.,* 365 F.3d 107, 122 (2d Cir. 2004); *see Bergesen v. Manhattanville College*, 2021 U.S. Dist. LEXIS 135033, *20 (S.D.N.Y. July 20, 2021)("courts finding the presence of such stereotyping have done so based on comments that refer explicitly to stereotypical assumptions," and that "[a]bsent remarks that have 'plain . . . connotations,' courts do not find that stereotypes have influenced employment decisions").

Moreover, when Plaintiff and her coworker Mills met with Mayor Michaels in February 2020, the two complained about discrimination they believed that they were subjected to at FCDA.  *See* FAC ¶ 99.  However, the majority of the conduct that they complained about occurred before Mayor Michaels assumed duties as the mayor of Fulton in January 2020. *See* FAC ¶ 97.  In this regard, Plaintiff and Mills complained about the decision to hire Williams as the Housing Specialist Supervisor even though Plaintiff and Mills believed they had both been promised the position, but the FAC indicates that Williams was hired in this position at the end of 2019.  FAC ¶ 77.  Plaintiff also complained about her low wage rate, but that rate was set when Plaintiff was hired by Fiumara in July 2019. *See* FAC ¶¶ 8, 28-34.  Likewise, Plaintiff complained about the decision to cut FCDA health care benefits in half, but that decision was made at the end of 2019. *See*

FAC ¶ 75.  Mayor Michaels was not directly involved in these actions and therefore the fact that she expressed "no interest in remediating the discriminatory treatment," FAC ¶ 100, does not amount to actionable personal involvement. *See Tangreti,* 983 F.3d at 618-620.  Similarly, Mayor Michaels had no direct personal involvement in "Fiumara's discriminatory comments and micro-managing,"  FAC ¶ 99, and therefore her declination to take action in response thereto is not a basis for Section 1983 liability. *See Tangreti,* 983 F.3d at 618-620.

Although Plaintiff contends that Mayor Michaels's attitude changed after she received Charges of Discrimination from the EEOC filed by Plaintiff and Mills in July 2020, Michaels's conduct thereafter did not evince a gender or gender-stereotype motive or animus.  Rather, Mayor Michaels called a meeting with FCDA staff and informed them that Fiumara was no longer Executive Director. FAC ¶ 103.  This conduct indicates no gender or gender-stereotype animus but rather that Mayor Michaels was taking Plaintiff and Mills's complaints seriously.  During the meeting, Mayor Michaels told FCDA staff that she was going to retain a law firm to conduct an investigation (although she did not specify about what) and told the staff that they would be required to sign confidentiality agreements. FAC ¶104.  She also said that she heard rumors about "what is going on" at FCDA and "that it was inappropriate for those employed by the agency to discuss work with anyone else." FAC ¶ 105.  Again this conduct does not plausibly indicate any gender or gender-stereotype animus, and although Plaintiff argues in her memorandum of law that Mayor Michaels threatened to discharge anyone who breached the confidentiality agreement, that allegation is not contained in the FAC.  Rather, the FAC merely indicates that Mayor Michaels noted that employment with FCDA was "at will," and when Plaintiff asked what

"at will" employment was, Michaels stated that anyone working at FCDA was there of their own "free will." FAC ¶ 107.  This misinterpretation of the "at will" doctrine does not plausibly indicate that Mayor Michaels threatened to discharge anyone, let alone Plaintiff.

To the extent Plaintiff contends she was subjected to an adverse employment action by Mayor Michaels's "screaming and complaining about" Plaintiff, FAC ¶  167, Plaintiff fails to allege that the screaming and complaining concerned Plaintiff's protected characteristics.  Thus, the allegation fails to allege an actionable Title VII claim. *See Farooq*, 2022 WL 793117, at *3 ("To the extent that Farooq found these comments to be insensitive or callous, 'mistreatment at work[ ] ... is actionable under Title VII only when it occurs because of an employee's ... protected characteristic.'")(quoting *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001)).

Accordingly, Plaintiff's § 1983 gender discrimination claim against Mayor Michaels is dismissed without prejudice to repleading.

### Section 1983 Retaliation Claim against Mayor Michaels

"[T]he elements of a retaliation claim based on an equal protection violation under § 1983 mirror those under Title VII." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 91 (2d Cir. 2015).  "'[F]or a retaliation claim to survive ... a motion to dismiss, the plaintiff must plausibly allege that: (1) defendants discriminated—or took an adverse employment action—against [her], (2) 'because' [s]he has opposed any unlawful employment practice.'" *Farooq*, 2022 WL 793117, at *4 (quoting *Vega*, 801 F.3d at 90 (citation omitted)).

Title VII retaliation claims are evaluated using the burden-shifting analytical framework of *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Hicks v.*

*Baines*, 593 F.3d 159, 164 (2d Cir. 2010).  "First, the plaintiff must establish a *prima facie* case of retaliation by showing: '(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Id.* (interior quotation marks and citations omitted).  The plaintiff's burden in this regard is *de minimis*.  *Id.*

A plaintiff engages in a protected activity if she "oppose[s] any practice made an unlawful employment practice" by Title VII, or 'make[s] a charge, testifie[s], assist[s], or participate[s] in any manner in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e–3(a); *Townsend v. Benjamin Enterprises, Inc.*, 679 F.3d 41, 49 (2d Cir. 2012).  Title VII's anti-retaliation provision thus "has two parts: the opposition clause and the participation clause." *Townsend*, 679 F.3d at 49.  Opposition activity is protected so long as the plaintiff had a "good faith, reasonable belief that the underlying challenged actions of the employer violated the law." *Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir.1988). The language of the participation clause refers to retaliation that "occur[s] in conjunction with or after the filing of a formal charge with the EEOC." *Townsend*, 679 F.3d at 49.

"Actions are 'materially adverse' if they are 'harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Hicks*, 593 F.3d at 165 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)).  This is an objective standard. *See Dedjoe v. McCarthy*, No. 1:15-CV-1170 (LEK/CFH), 2017 WL 4326516, at *14 (N.D.N.Y. Sept. 28, 2017).  "[I]n determining whether conduct amounts to an adverse employment action, the alleged acts of retaliation

need to be considered both separately and in the aggregate, as even minor acts of retaliation can be sufficiently 'substantial in gross' as to be actionable." *Hicks*, 593 F.3d at 165 (citing *Zelnik v. Fashion Inst. of Tech*., 464 F.3d 217, 227 (2d Cir. 2006)).

"[P]roof of causation can be shown either: (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Id.* at 170 (internal quotation marks and citation omitted). "'[A] plaintiff must plausibly plead' causation, i.e., 'a connection between the [alleged retaliatory] act and [her] engagement in protected activity.'" *Farooq*, 2022 WL 793117, at *4 (quoting *Vega*, 801 F.3d at 90 (citation omitted)). "'Unlike Title VII discrimination claims, however, for an adverse retaliatory action to be 'because' a plaintiff made a charge, the plaintiff must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action." *Id.* (quoting *Vega*, 801 F.3d at 90, in turn citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013)). Regarding temporal proximity, the Second Circuit has not "'drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action.'" *Farooq*, 2022 WL 793117, at *4 (quoting *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009)(cleaned up)). "But in the absence of additional allegations supporting causation, 'mere temporal proximity' must be 'very close' to establish a causal connection between the protected activity and an adverse employment action." *Id.* (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (citation omitted)).

Ultimately, Plaintiff must show "that the desire to retaliate was the but-for cause of the challenged employment action." *Ya-Chen Chen v. City Univ. of New York*, 805 F.3d 59, 70 (2d Cir. 2015) (quoting *Nassar*, 570 U.S. at 352). "'But-for' causation does not, however, require proof that retaliation was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive." *Duplan v. City of New York*, 888 F.3d 612, 625 (2d Cir. 2018)(quotation marks and citation omitted).

**Analysis**

To the extent that the § 1983 retaliation claim against Mayor Michaels is based upon "the retaliation of others under her supervision that ... she has condoned," FAC ¶ 186, Plaintiff fails to allege facts plausibly indicating that Mayor Michaels was directly involved in this retaliation by others.  Thus, the retaliation claim to this extent must be dismissed. *See Tangreti,* 983 F.3d at 618-620.

The allegation that Mayor Michaels was behind the decisions to revoke the $5000 stipend to be used toward heath care costs and instead offer a health care insurance plan that was too expensive for Plaintiff to afford, and to eliminate the four (4) paid personal days for the staff, is too remote from Plaintiff's protected activity involving Mayor Michaels to satisfy the causation element of the *prima facie* case.  Plaintiff and Mills complained about perceived discrimination to Mayor Michaels in February 2020, FAC ¶ 99, and Michaels received Plaintiff and Mills's Charges of Discrimination from the EEOC in July 2020.  FAC ¶ 102.  The decisions concerning the above-referenced employment benefits were made in January 2021.  FAC ¶¶ 121-123.  Without some allegation that Mayor Michaels evinced gender or gender-stereotype animus such as by invidious comments,

this temporal proximity of approximately six months is too attenuated from Plaintiff's protected conduct to allow for an inference of causation. *See Farooq*, 2022 WL 793117, at *4 ("The five-month temporal gap here, standing alone, is insufficient to plead causation.")(citing *Hollander v. Am. Cyanamid Co.*, 895 F.2d 80, 85–86 (2d Cir. 1990) (concluding that a period of three-and-a-half-months between a protected activity and the employer's adverse action failed to establish a causal connection)).

Regarding Mayor Michaels's actions immediately following her receipt of the EEOC charges, the actions of removing Fiumara from his position as Executive Director, telling the staff that she was going to hire a law firm for an undisclosed reason, making the staff sign confidentiality agreements, telling the staff that it was inappropriate to discuss "work" with anyone else, telling the staff that employment at FCDA was "at will" meaning to Michaels that the employees were there of their own free will, and that Michaels and the FCDA Board of Directors would be stopping by the FCDA office for undisclosed reasons are not actions that, objectively, would dissuade a reasonable employee from making or supporting a charge of discrimination.  Furthermore, without some indication that these actions, which seemingly applied to all FCDA employees, were intended to target women or working mothers with minor children, Plaintiff has not plausibly alleged that the actions were taken "because" Plaintiff opposed an unlawful employment practice. *See Farooq*, 2022 WL 793117, at *4; *Vega*, 801 F.3d at 90.

Plaintiff's allegation that she has been informed by her coworkers "that since the filing of this litigation, Mayor Michaels has been heard at the FCDA office screaming and complaining about" Plaintiff, FAC ¶ 167, fails to allege the temporal proximity between the filing of this action and the date or dates that this conduct occurred.  Thus, the FAC fails to

41

plausibly support the causal connection element of the *prima facie* case regarding this conduct.  Further, the FAC does not allege whether Michaels's comments concerned the filing of this litigation, Plaintiff's other protected conduct, or if Michaels made any invidious comments concerning gender or working-mothers.  Thus, the FAC fails to plausibly allege that this action was taken by Mayor Michaels because Plaintiff filed a charge of discrimination.  *See  Farooq*, 2022 WL 793117, at *4 ("For a retaliation claim to survive a motion to dismiss, the plaintiff must plausibly allege that: (1) defendants discriminated—or took an adverse employment action—against him, (2) because he has opposed any unlawful employment practice.  A plaintiff must plausibly plead causation, i.e., a connection between the act and his engagement in protected activity. Unlike Title VII discrimination claims, however, for an adverse retaliatory action to be because a plaintiff made a charge, the plaintiff must plausibly allege that the retaliation was a but-for cause of the employer's adverse action.")(cleaned up).

Whether considered separately or in the aggregate, Mayor Michaels's alleged acts of retaliation do not support a plausible claim of equal protection retaliation.  Accordingly, the claim in this regard is dismissed without prejudice to repleading.

### d. NYSHRL Claims

Defendants argue, *inter alia*, that if all federal claims are dismissed, the Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims brought pursuant to the NYSHRL. *See* Dkt. 17-1 at 22-23.[5]  As a general rule, "when the federal claims are dismissed the state claims should  be dismissed as well." *In re Merrill*

---

[5]Defendants also argue that the NYSHRL claims to be dismissed for other reasons. *See* Dkt. 17-1 at 23-25.

*Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 61 (2d Cir. 1998)(citation omitted); *see Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006)("[A] district court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction."); *McMyler v. Bank of Utica*, 2021 U.S. Dist. LEXIS 124703, *10-11 (N.D.N.Y. July 2, 2021) (declining to exercise supplemental jurisdiction upon the dismissal of plaintiff's federal claims).

The Court has dismissed all of Plaintiff's federal claims, but it has done so without prejudice to repleading and granted Plaintiff leave to file a second amended complaint potentially rectifying the deficiencies in the FAC.  The Court finds that the most efficient use of scarce judicial resources is to deny Defendants' motion on this, and Defendants' other grounds addressed to the NYSHRL claims, with leave to renew.  If Plaintiff does not file a second amended complaint, Defendants can renew the motion asking the Court to decline to exercise supplemental jurisdiction over Plaintiff's state law claims. If Plaintiff files a second amended complaint, Defendants can renew their motion on this ground and on the other grounds addressed to the NYSHRL claims.

## V.    CONCLUSION

For the reasons discussed above, Defendants' motion to dismiss, Dkt. 17, is **GRANTED in part** and **DENIED in part**. The motion is granted in that Plaintiff's Title VII claims against the City of Fulton and the Fulton Community Development Agency, and Plaintiff's § 1983 claims against Deana Michaels, are **DISMISSED without prejudice to repleading**.  Plaintiff is **granted leave** of thirty (30) days from the date of this Decision and Order to file a second amended complaint to, in good faith, attempt to cure the defects in her pleadings.  The motion is denied in all other respects, and the denial is

without prejudice to Defendants renewing their arguments addressed to matters not resolved by this Decision and Order.

**IT IS SO ORDERED.**

Dated: June 2, 2022

Thomas J. McAvoy
Senior, U.S. District Judge